## Fountain Hill Borough v. Wohlbach

*Butz, Hudders, Tallman, Huston & Wieand,* for plaintiff.

*John F. Stine, Jr.,* and *James G. Kellar,* for defendants.

*William J. Morrissey,,* amicus curiae.

HENNINGER, P. J., February 23, 1960.—The Borough of Fountain Hill consists of two wards with three borough councilmen in each ward. The term of E. W. Wohlbach and Earl Bauman, both councilmen from the first ward, expired on the first Monday in January

1960. Wohlbach did not seek reëlection; Bauman was a nominee of his party but was defeated for reëlection.

Frank Brown and James F. Quigg were elected to succeed Wohlbach and Bauman as two of the three councilmen from the first ward. Quigg died December 15, 1959, between the date of his election and the date he would have taken his seat in council.

Wohlbach and Bauman each insisted that he should retain his seat until a successor would be qualified, assuming that under the interesting case of Commonwealth ex rel. Matthews v. Lomas, 302 Pa. 97, no vacancy is created by the death of an elected borough official, and that the predecessor in office holds over until a successor has qualified.

Borough council, perplexed by the dilemma that two men could not qualify for the same seat and that they had no power to increase the first ward's representation to four, petitioned for a declaratory judgment. This was on the further assumption that in any event there would be no vacancy until council so declared, thus giving council an opportunity, for 30 days after such declaration, itself to fill such vacancy.

We are not impressed by any of the arguments presented for the choice of either man as the successor. We have no right to cast lots to decide a legal question. See even as to tie votes in elections. In re Contested Election in Clarion Borough, 189 Pa. 79, 81: "If they do not [election laws make provision for a tie vote], then clearly there is a failure to elect, and a resulting vacancy. . . ." Wohlbach's adherence to the same political party as the deceased councilman-elect might strengthen his case as a matter of public policy but it gives him no legal status in the absence of a law to that effect. Bauman's running for the office and having been defeated gives him no preferred standing, for after the defeat he stands in the same

shoes as Wohlbach. In fact his running for office and having been defeated cuts both ways; it raises the query whether council should choose one whom the people did not choose. Clearly, he has no claim as runner up, for the courts have held that even the only live candidate loses to a dead man who has received more votes: Derringe v. Donovan, 308 Pa. 469, 475, approved in McLane's Appeal, 345 Pa. 228, and Shroyer v. Thomas, 368 Pa. 70.

We need not solve the knotty problem of whether a borough council can by its own inaction in failing to *declare* a vacancy which obviously exists, indefinitely prolong the period during which it has the right to choose an incumbent for the vacancy. During the course of the proceedings and within 30 days of the first Monday in January, borough council did in fact declare the post vacant and elected Wohlbach to fill the vacancy.

This leaves us with the single and, to our mind, simple problem whether the death of the councilman-elect between the date of his election and the time of beginning of his term causes a vacancy in the office of borough councilman.

Were it not for the case of Commonwealth ex rel. Matthews v. Lomas, supra, there could be no question. That case, however, held as to a borough tax collector, that since under both section 804 of The Borough Code of May 4, 1927, P. L. 519, 53 PS §45804, and the Act of March 22, 1927, P. L. 53, sec. 1, 53 PS §573, a municipal officer shall hold his office until his successor is elected or appointed and qualified, no vacancy existed upon the death before taking office of one elected thereto. Since that case represents the law of Pennsylvania, we express no opinion of what might be termed a strained interpretation of the word "vacancy."

In 1947, however, that part of section 804, 53 PS §45804, was amended to read:

"Persons elected to borough offices, other than the office of member of council, shall serve until their successors are elected and qualified, but such service shall not continue longer than the first Monday of January succeeding the next municipal election, at which election a successor shall be elected for the unexpired term."

We cannot find a more deliberate attempt on the part of the legislature to avoid the force of the Matthews case than by the language there used. It strikes down two reasons for the rationale of the Matthews case: (1) that the two acts (of 1927) having been passed by the same legislature were in pari materia; and (2) that they read alike and that therefore the later passage of The Borough Code was not inconsistent with the earlier general Municipal Act and did not repeal it by implication.

In our opinion it is crystal clear that the quoted sentence in toto is not to apply to borough councilmen. It has been urged upon us that the clause, "but such service, etc.", relates to councilmen. This is absurd for the service in that clause obviously relates to the word "serve" in the preceding clause and that language specifically does not apply to borough councilmen. It is equally obvious that the whole sentence was intended to eliminate borough councilmen entirely from the effect of the Matthews case and to limit other officers to service until an election could be held. Surely no one would contest that "at which election, etc.," must refer back to the limitation of the term of a predecessor holding over and since that does not, for the reason given above, apply to councilmen, neither does the last clause apply to councilmen.

This conclusion makes it possible to give full effect to section 810 of The Borough Code, 53 PS §45810, which provides in part:

"Biennially thereafter, at the municipal election, a sufficient number of councilmen shall be elected, for a term of four years from the first Monday of January next succeeding, to fill the places of those whose terms, under the provisions of this act, shall expire on the first Monday of January next following such election."

It also enables us to give due effect to the words "or in any other manner whatsoever" in section 901, 53 PS §45901, which reads in part as follows:

"If any vacancy shall occur in the offices of burgess, member of council, auditor, controller, or tax collector, by death, resignation, removal from the borough, or from a ward in the case of a ward office, or by failure to take the required oath or to give bond as provided by law or ordinance, or in any other manner whatsoever, the borough council shall fill such vacancy by appointing, by resolution, a registered elector of the borough, or of the ward in case of a ward office, to hold such office for the unexpired term of the office."

When James Quigg failed to appear and qualify on January 4, 1960, there was no one qualified to take his place and a vacancy existed in fact, which the remaining members of council had the right to fill. They have declared the vacancy and filled the vacancy and their choice is a qualified councilman of the Borough of Fountain Hill for the unexpired term of James Quigg, the duly elected councilman.

Now, February 23, 1960, it is the judgment of this court that Erwin W. Wohlbach legally holds the office of councilman in the Borough of Fountain Hill for a term expiring four years from the first Monday in January, 1960.